JOURNAL ENTRY AND OPINION
On January 25, 2000, the petitioner, Morris Novak, pursuant to App.R. 26 (B), applied to reopen this court's judgment in State of Ohio v.Morris Novak (Sept. 10, 1998), Cuyahoga App. No. 72849, unreported, which affirmed Mr. Novak's conviction for complicity in the commission of attempted murder. Although the State of Ohio did not file a brief in opposition, this court denies the application for the following reasons.
 FACTUAL AND PROCEDURAL BACKGROUND
The charges against Mr. Novak arose as a result of Mr. Novak's allegedly asking Jack Searl, an old acquaintance, to murder his girlfriend's ex-husband. At the time Mr. Searl was under a federal indictment. As part of his cooperation with the F.B.I., Mr. Searl taped his conversations with Mr. Novak, and turned the tapes over to the authorities.[1]
The Cuyahoga County Prosecutor became aware of the facts of this case in early March 1996. At that time attorney Irl Rubin represented Mr. Novak. Before the matter went to the Grand Jury, Mr. Rubin and the prosecutor met several times to try to resolve the case. At one of these meetings the state provided full discovery to Mr. Rubin, including playing all the audiotapes Mr. Searl provided. Nevertheless, they reached no agreement. On March 21, 1996, the Grand Jury indicted Mr. Novak on (1) complicity in the commission of attempted murder, (2) complicity in the commission of attempted felonious assault and (3) complicity in the commission attempted felonious sexual penetration.
During pre-trial proceedings in April, Mr. Rubin requested certain materials from the state. Later that month the state provided the requested materials, as well as copies of all the audiotapes. After several continuances at the defendant's request during the Summer of 1996, the court eventually set the trial for September 24, 1996. On September 23, 1996, a new attorney, Thomas Wagner, filed a notice of appearance for Mr. Novak and also filed a motion for continuance, which the prosecutor opposed.[2] The court continued the trial, and in October referred Mr. Novak for a psychiatric examination.
On December 20, 1996, Mr. Novak pleaded guilty to complicity in the commission of attempted murder. The trial court engaged in a colloquy with Mr. Novak, accepted his guilty plea and nolled the other charges. In early 1997, the court sentenced Mr. Novak to five to twenty-five years in prison. At the sentencing Mr. Novak admitted: "I said things that I should have not said, and I accept that this was wrong and I accept responsibility for it. I shouldn't have done it." (Tr. pg. 16.) The trial judge in imposing sentence stated that he had reviewed "the circumstances involved in the underlying facts in this case. * * * I find them to be abhorrent." (Tr. Pg. 31.)
On June 11, 1997, Mr. Novak moved to withdraw or otherwise vacate the guilty plea. The trial court denied that motion on June 13, 1997, and Mr. Novak appealed on July 11, 1997.
Mr. Novak's counsel argued the following assignments of error: (1) The trial court lacked subject matter jurisdiction over the original charges. (2) Prosecutorial misconduct induced the guilty plea; there was no factual basis for the plea. (3) Because the guilty plea was induced by threats and promises, it was not voluntary, and a conviction so obtained violated due process. (4) The trial court erred by failing to inform Mr. Novak of the nature and elements of the crime, as well as the defenses available. Under this assignment of error, Mr. Novak's appellate counsel also argued that trial counsel did not adequately inform Mr. Novak of the elements of the charge or possible defenses. (5) The trial court failed to comply with Criminal Rule 11. (6) The trial court erred and denied Mr. Novak due process of law when it summarily denied the motion to withdraw the guilty plea without a full and fair hearing. This court affirmed the conviction on September 21, 1998.
On November 5, 1998, Mr. Novak, through the same counsel he had before this court, appealed to the Supreme Court of Ohio. On February 4, 1999, the supreme court dismissed that appeal because there was no substantial constitutional question. Approximately a year later Mr. Novak filed this application to reopen.
 DISCUSSION OF LAW
Nr. Novak claims that his appellate counsel was ineffective for not arguing that his trial counsel was ineffective because the trial counsel failed to file for a bill of particulars and a motion for discovery, resulting in trial counsel being unprepared to adequately represent him.
App.R. 26 (B) (1) and (2) (b) require applications claiming ineffective assistance of appellate counsel to be filed within ninety days from journalization of the decision unless the applicant shows good cause for filing at a later time. The January 25, 2000 application was filed approximately fifteen months after this court's decision. Moreover, when this court issued that decision, State v. Murnahan (1992),63 Ohio St.3d 60, 584 N.E.2d 1204, had been released for over six years, and App.R. 26 (B) had been the law for over five years. Therefore, Mr. Novak's claims of ignorance of the law because he is a layman are not persuasive to establish good cause. The laws were too well known and too much time elapsed. State v. Klein (Apr. 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (Mar. 15, 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481; State v. Trammell (July 24, 1995), Cuyahoga App. No. 67834, unreported, reopening disallowed (Apr. 22, 1996), Motion No. 70493; State v. Cummings (Oct. 17, 1996), Cuyahoga App. No. 69966, unreported, reopening disallowed (Mar. 26, 1998), Motion No. 92134; and State v. Young (Oct. 13, 1994), Cuyahoga App. Nos. 66768 and 66769, unreported, reopening disallowed (Dec. 5, 1995), Motion No. 66164. Ignorance of the law is no excuse. This defect alone is sufficient to dismiss the application.
In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland,104 S.Ct. at 2065.
Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen (1996), 77 Ohio St.3d 172, 672 N.E.2d 638.
Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
In the present case Mr. Novak's argument on ineffective assistance of appellate counsel is not well taken. Mr. Novak's appellate counsel in his fourth assignment of error argued trial counsel's ineffectiveness in failing to explore defenses and possible weaknesses in the charge. That argument covers much the same ground as Mr. Novak's current contention, the failure to obtain particulars and discovery. Pursuant to the Supreme Court's admonitions, this court will not second guess appellate counsel's strategy. Additionally, given the references in the record that Mr. Novak's trial counsel were provided with complete discovery, including all of the audiotapes, appellate counsel in the exercise of professional judgment could properly conclude that arguments based on the failure to file for discovery and a bill of particulars would be too weak to include and could lesson the impact of the other arguments.
Finally, Mr. Novak has not demonstrated prejudice. Other than pure speculation he has not shown how a bill of particulars would have necessarily made a difference in his trial. Nor has he established what other discovery existed, much less how it would have made a difference in his case. A review of the record, especially Mr. Novak's admission at sentencing that his actions were wrong, indicates that it is highly unlikely that prejudice could be established.
Accordingly, Mr. Novak's application to reopen is denied.
 _____________________ JOHN T. PATTON, JUDGE
 TIMOTHY E. McMONAGLE, P.J. MICHAEL J. CORRIGAN, J., CONCUR
[1] In its appellate brief the state asserted that the tapes revealed the following: Mr. Novak provided specific identifying information, including social security number and date of birth, on his girlfriend's ex-husband. He repeatedly sought to have the man killed; he and Mr. Searl determined a price. Mr. Novak further noted that the body must be found, so that his girlfriend could collect from her ex-husband's estate.
[2] The above narrative is based on all the materials in the record, including the prosecutor's brief in opposition to the motion for continuance filed on September 23, 1996.